UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE DAVIS,

        Plaintiff,

Case No. 1:24-cv-252

Hon. Robert J. Jonker

v.

UNKNOWN ALVIAR and
MICHIGAN DEPARTMENT OF
CORRECTIONS BUREAU OF HEALTH CARE,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Willie Davis, a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant Alviar's motion for summary judgment on the basis of exhaustion (ECF No. 5).

    **I.**    **The complaint**

The alleged incidents occurred at the MDOC's Muskegon Correctional Facility (MCF). Opinion (ECF No. 4, PageID.32). Plaintiff identified two defendants: Nurse Practitioner Alviar, identified as the "N.P. Muskegon Correctional facility Nurse"; and, the "Michigan Department of Corrections (Bureau of Health Care)", identified as the "Health Care Provider".[1] Compl. (ECF No. 1, PageID.2). The Court summarized plaintiff's claims as follows:

> Plaintiff alleges that he has suffered from lower back pain since 2009 and that he was finally seen by a specialist on October 2, 2023. Plaintiff was given an MRI which showed a lower disc in his spine pressing on his sciatica nerve. (ECF

---

[1] The Court previously noted that "Although Plaintiff identifies the defendant as the Bureau of Health Care, the actual name is the Bureau of Health Care Services." Opinion at PageId.32, n. 2.

1

No. 1, PageID.3.) The specialist, Dr. John W. Hawkins, administered an injection in Plaintiff's lumbar spine and prescribed meloxicam and "a better bed cushion." (*Id.*, PageID.3; ECF No. 1-1, PageID.12-14.) Plaintiff asserts that Defendant Alviar subsequently denied a bed cushion in contravention of the specialist's orders. (ECF No. 1, PageID.3.)

Plaintiff seeks injunctive relief and compensatory and punitive damages. *Id*. at PageID.33.

On initial screening, the Court dismissed the MDOC (*i.e.*, the "Health Care Provider"). *See* Order (ECF No. 5). However, the Court allowed the case to proceed with plaintiff's claim that N.P. Alviar "violated his Eighth Amendment rights when she denied him access to a bed cushion, which was prescribed by a specialist." Opinion at PageID.35. As discussed, the remaining defendant, N.P. Alviar, has moved for summary judgment.

## II.    Motion for summary judgment

### A.    Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

2

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

3

1.      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

2.      **Discussion**

Plaintiff's MDOC Prisoner Step III Grievance Report (ECF No. 12-1, PageID.77), includes one grievance filed through Step III, that being MCF-23-10-0940-28I ("940"). That grievance, which involved an incident occurring on October 12, 2023, is not directed at defendant

N.P. Alviar.  Rather, plaintiff explicitly stated that he was not filing a grievance against N.P. Alviar (in his words):

> I am writting this Grievance against the Health Care provider, and not the Nurse Practitioner Alviar).  I was seen by an Spine and Nerve Specialist on 10-02-23.  He then decided because of pressure being applied to my back by sleeping on the state issued matrices, is causing or contributing to my injuries every few months causing pain and discomfort.  He then changed my medication and ordered for me to be issued a Bed-Cushion.  On 10-12-23, I was seen by Nurse Practitioner (Alviar), where she assured me I would be denied the Bed Cushion, in which is very vidal for my condition.  I was offered an extra pillow instead (I can't sleep on top of a Pillow!!).  (I really need the Bed-Cushion !!).

Grievant 940 at PageID.81.  The grievance was rejected at Step I because plaintiff made "No attempt to resolve" the grievance.  *Id*. at PageID.81-82.  The rejection was upheld at Steps II and III.  *Id*. at PageID.78-80.

Defendant N.P. Alviar contends that plaintiff failed to properly exhaust the grievance because (1) the grievance was directed at the MDOC (*i.e.*, the "Health Care Provider") not her, and (2) the grievance was rejected because plaintiff failed to attempt to resolve the issue before filing the grievance (*see, e.g.*, PD 03.02.130 at ¶¶ W, Y and CC).

### a. Plaintiff did not direct a grievance against defendant N.P. Alviar

"[W]here a prisoner names specific individuals at Step I of the grievance process, prison officials would naturally assume that the prisoner complied with exhaustion requirements for those named at Step I."  *Hall v. Cole*, No. 2:23-cv-28, 2024 WL 4884613 at *4 (Oct. 25, 2024), *R&R adopted*, 2024 WL 4880598 (W.D. Mich. Nov. 25, 2024) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) and *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159 at *3 (6th Cir. April 23, 2019)).  "Thus, when specific individuals are named at Step I, exhaustion is limited to the named individuals."  *Id*.  *See also*, *Bickham v. Vanderschaegen*, No. 2:22-cv-182, 2024 WL 3541545 at *5 (June 25, 2024), *R&R adopted*, 2024 WL 3540243 (W.D. Mich. July 25,

5

2024) ("By naming specific individuals, [the plaintiff prisoner] limited the exhaustion of the claims within his grievance to those individuals."). As discussed, plaintiff directed his grievance against "the Health Care provider, and not the Nurse Practitioner Alviar". Grievance 940 at PageID.81. In short, plaintiff did not file a grievance against defendant N.P. Alviar. Based on this record, plaintiff did not properly exhaust a grievance to support his claim against defendant N.P. Alviar. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Alviar's motion for summary judgment should be granted on this basis.

### b. Plaintiff's grievance was rejected

As discussed, plaintiff's grievance was rejected at Steps I, II and III because plaintiff took no steps to resolve the issue prior to filing the grievance. Based on this record, plaintiff did not properly exhaust a grievance to support his claim against defendant N.P. Alviar. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Alviar's motion for summary judgment should be granted on this basis.

### III. Recommendation

For these reasons, I respectfully recommend that defendant N.P Alviar's motion for summary judgment (ECF No. 23) be **GRANTED** and that this action be **terminated**.

Dated: December 22, 2025                        /s/ Ray Kent
                                                RAY KENT
                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).